UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN PALATAS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:22-cv-02128-TWP-MG |
| | ) |
| DENNIS REAGLE, | ) |
| | ) |
| Respondent. | ) |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

John Palatas' petition for a writ of habeas corpus seeks relief from his conviction and sanctions in prison disciplinary case ISR 22-07-0182. For the following reasons, his petition is denied, and this action is dismissed with prejudice.

## I. Overview

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

1

## II. The Disciplinary Proceeding

On July 24, 2022, Correctional Officer M. Sommers wrote a conduct report in case ISR 22-07-0182, charging Mr. Palatas with offense A-117 battery. Dkt. 9-1. The conduct report stated:

> On July 24, 2022 at approximately 3:43pm I, Ofc. M. Sommers was passing out ice on the 3C Range of G-Cellhouse. When I got to Incarcerated Individual Palatas, John #244606 G-Cellhouse 3-1C, he started yelling about me about getting ice so late in the day. I attempted to calm Palatas down and give him his ice when he threw a food tray out of his cuff port onto the range. I then informed Palatas after finishing ice pass out and mop out sweep, we would be gathering up all the remaining trash and trays from the day. Palatas then started yelling profanities at me and spit on me through the grate in his cell door. The spit hit me on the front upper part of my body and got on my radio. I then left the range.

*Id*.

Officer Sommers photographed herself, stored the photographs in an evidence locker, and completed an evidence record form. Dkts. 9-2; 11, *ex parte*.

On July 24, 2022, Mr. Palatas submitted a request for interview form in which he asked for the camera footage for GCH IC range front camera on July 24 from 3:35 pm to 3:50 pm to be saved. Dkt. 9-5. On July 26, the screening officer notified Mr. Palatas of the charge A-117, battery, and provided him with a copy of the conduct report and the disciplinary hearing notice (screening report). Dkt. 9-3. The screening officer advised Mr. Palatas of his rights, and Mr. Palatas pled not guilty. *Id.* Mr. Palatas requested offenders Cole, Parker, and Sarver as witnesses. *Id.* He also requested video evidence to show that the "officer threw tray in cuff port." *Id.*

Offender C. Cole (#930279) provided the following witness statement:

> View Camera footage and You'll see what I seen. I did not see cell #3 spit on c/o Summer. I saw him Throw a Tray on the Range (Not on her), and I seen her pick up the Tray and throw it Back in his cell being very unprofessional. She never got on her Radio as she said and Did not leave the Range until she was Done passing out ICE.

Dkt. 9-9 at 1.

>Offender R. Sarver (#160231) provided the following witness statement:
>
>Off. Summers was passing ice and when she got to cell 3, he threw his tray out. Officer threw the tray back at him. She never called signal, and continued passing ice normally. Cell 3 never spit on her nor argued. Summers ran and grabbed the tray and threw it (tray) back at offender. Officer Summers has been having issues with a lot of people.

Dkt. 9-9 at 2.

>Offender J. Parker (#268274) provided the following witness statement:
>
>Mr. Palatas was getting ice when he threw his tray out on the range and Ofc. Summer picked up Mr. Palatas' tray and threw it back in his cell. Then Ofc. Summer continued to pass out ice to the remaining cells. There was no signal called for anything and there was no argument about ice. I was standing at my cell door waiting for ice and saw everything that happened.

Dkt. 9-9 at 3.

On August 2, disciplinary hearing officer (DHO) Miller reviewed the requested video evidence. Dkt. 9-7. The video evidence review report states:

>3:42:38 Officer Sommers arrives at cell 3-1c to pass ice and appears to have an argument with Offender Palatas.
>3:43:16 Sommers gives Palatas a scoop of ice and goes to get him another at which time Palatas throws a plastic tray out on the range. Sommers retrieves the tray and closes his cuffport.
>3:43:37 Sommers opens cuffport and drops the tray back in Palatas cell then closes cuffport.
>3:43:42 Palatas throws the tray at his cell door.
>3:43:52 Sommers moves to cell 2 with ice. You can see through the crack of Palatas cell door that he is yelling at Sommers as she continues to pass ice. She then gives cell 1 ice and leaves the range.

*Id.*

The Court's review of the video evidence is consistent with the above summary.

On August 16, 2022, the DHO held the hearing in case ISR 22-07-0182. Dkt. 9-6. Mr. Palatas pled not guilty and provided a written statement. Dkt. 9-8. Mr. Palatas claimed that he

never spit on Officer Sommers, video evidence would support his defense, and Officer Sommers fabricated the entire incident because she threw a tray at Palatas. *Id.* The DHO found Mr. Palatas guilty based on staff reports, Mr. Palatas' statement, the photographs, witness statements, and the video evidence. Dkt. 9-6. Under the reason for decision, the DHO wrote, "Evidence support. Photo shows wetness, CR described spit on radio." *Id.* The DHO imposed sanctions including a 180-day loss of earned credit time. *Id.*

Mr. Palatas' appeals were denied, and this habeas action followed.

### III. Discussion

Mr. Palatas' claims for relief are: (1) he was denied witnesses; 2) the DHO was not an impartial decisionmaker; and 3) there was insufficient evidence. Dkt. 2 at 3-5.

#### A. Denial of Witnesses

The right to call witnesses extends only to "material exculpatory evidence." *Jones v. Cross,* 637 F.3d 841, 847 (7th Cir. 2011). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). The right is further limited in that "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). "Inmates have a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety and correctional goals." *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974)).

Mr. Palatas contends that he was denied witnesses that he requested. The record does not support this claim. At screening, Mr. Palatas identified three witnesses, offenders Cole, Parker, and Sarver. All three submitted statements and the DHO considered those statements. To the extent Mr.

4

Palatas is arguing that the DHO denied his request to have case manager Vckov talk to the hearing officer on Mr. Patalas' behalf, the DHO's denial of that request did not deny Mr. Palatas' due process rights because CM Vckov did not witness the event and her testimony as a character witness would not be relevant. Moreover, to the extent he is arguing that the DHO failed to give more weight to the witnesses who said Mr. Palatas did not spit on the officer, this is not a meritorious claim because the Court cannot reweigh the evidence. *See Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.").

### B.  Impartial Decisionmaker

Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie,* 342 F.3d at 666; *Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009). Indeed, the "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding." *Piggie*, 342 F.3d at 666.  Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof."  *Id.* at 667.

Mr. Palatas does not allege that the DHO was involved in the incident at issue or its investigation. Mr. Palatas contends that because the DHO told him that he believed Officer Sommers' conduct report, he was biased. This is not enough to demonstrate that he was denied an impartial decisionmaker. This claim fails.

### C.  Sufficiency of Evidence

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820

5

F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) (same).

The "'some evidence' standard" is "a 'meager threshold.'" *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs*, 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* As discussed above, this Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)). Here, the conduct report and the photographs provide sufficient evidence to support the charge and disciplinary conviction. There was no due process error in this regard.

## IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff*, 418 U.S. at 558.  There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Palatas to the relief he seeks. Accordingly, Mr. Palatas' petition for a writ of habeas corpus must be **denied** and the action **dismissed.** Judgment consistent with this Order shall now issue.

IT IS SO ORDERED.

Date: 8/27/2025

*[signature]*

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

JOHN PALATAS
244606
WABASH VALLEY - CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

Natalie Faye Weiss
INDIANA ATTORNEY GENERAL
natalie.weiss@atg.in.gov